UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KEVIN MILLER et al.,

    Plaintiffs,

v.                                                  Case No. 14-CV-379

VONAGE AMERICA, INC.,

    Defendant.

---

**DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

---

This diversity case arises out of the inadvertent publication by the subcontractor of a telephone service provider of a new subscriber's home telephone number and address in various printed and online directories. The case is again before the court on a motion to dismiss for failure to state a claim. On August 21, 2014, the court issued a decision and order granting the defendant's Rule 12(b)(6) motion to dismiss all nine counts in the plaintiffs' original complaint without prejudice. (ECF No. 17.) Plaintiffs filed an amended complaint on September 19, 2014, and the defendant has again moved for dismissal, this time with prejudice, on the ground that even as amended the complaint still fails to state a claim for relief. For the reasons below, the motion will be granted.

**I. GENERAL ALLEGATIONS**

Dr. Kevin Miller is a psychologist who practices in and around seven counties in northeastern Wisconsin. As part of his practice Dr. Miller accepts court appointments to evaluate the mental status and level of dangerousness of individuals who are charged with criminal conduct or subject to civil commitment proceedings. He is also privately retained to perform such evaluations. The amended complaint alleges that "because a part of his practice deals with persons with violent,

dangerous, and/or delusional propensities, Dr. Miller, at all times keeps his family's home information separate and secure, from his business information." (Am. Compl. ¶ 11, ECF No. 19.) The amended complaint also alleges that Dr. Miller's wife was sexually assaulted as a child and therefore "purposefully maintains herself and her home to provide utmost safety." (*Id.* ¶ 15.) The Millers also have an autistic child who is "unable to appreciate safety issues." (*Id.* ¶ 14.) For all of these reasons, it was important to Dr. Miller and his family to make sure that personal information, such as their home address and telephone number, was not published in any print or online telephone directories.

In April 2012, Dr. Miller switched his family's residential telephone service from TDS Metrocom to Defendant Vonage America Inc. Prior to switching to Vonage, Dr. Miller researched Vonage's residential calling plans on Vonage's website to determine whether Vonage would keep his family's home address and telephone number unpublished. After satisfying himself that his family's home address and telephone number would remain unpublished, Dr. Miller opened a Vonage account.

Beginning in July 2013, Dr. Miller and his family began receiving business calls from other professionals, patients and persons who were ordered to undergo court ordered assessments at his home. He discovered that his home address and telephone number had been published in various print and online telephone directories. After further investigation as to how this occurred, Dr. Miller discovered that his family's home address and telephone number had been "ported" by Choice One/One Communications (n/k/a Earthlink Business), Vonage's "subcontractor." (*Id.* ¶¶ 34–35.) A representative of Choice One "acknowledged it errantly issued service orders for the publication of the Miller's Personal Information in business listings." (*Id.* ¶ 36.) The error was compounded

2

by Vonage's failure to take immediate steps to correct it. (*Id.* ¶ 57.)

Fearful that they were no longer safe in their home as a result of their address having been published, Dr. Miller and his wife decided to move to a new home. They incurred significant expenses and expended numerous hours away from their respective jobs in searching for, purchasing, and moving into a new home that met their needs. To compound their loss, they have elected not to put their old home on the market because of the "dangerous stigma currently attached to it," and instead are renting it at below market value after disclosing to the tenants the nature of Dr. Miller's practice and the fact that their home address had been published. Finally, the amended complaint alleges that the Miller's son has become stressed by the change in his routine and, as a result, injured himself, developed suicidal ideation and had to be admitted to a psychiatric hospital. (*Id.* ¶¶ 63–67.)

In their amended complaint, Plaintiffs (collectively, "the Millers") have asserted state law claims for negligent and strict responsibility misrepresentation; violation of Wisconsin's Deceptive Trade Practices Act (DTPA), Wis. Stat. §100.18; negligent performance of services; and negligent infliction of emotional distress. They seek to recover damages for the expenses they incurred in buying and moving into a new home, the loss in value to their old home, the self-inflicted physical injuries to their son, and the emotional and psychological injuries they have all sustained as a result of the ordeal. They also seek punitive damages, attorneys fees and such other relief as the court deems just and reasonable.

## II. ANALYSIS

The rules governing the court's consideration of a Rule 12(b)(6) motion to dismiss were set forth in the court's decision granting Vonage's previous motion and need not be restated here. Instead, the court will proceed to address the claims asserted in Plaintiffs' amended complaint.

3

### A. Misrepresentation

The court previously granted Vonage's motion to dismiss the Millers' claims sounding in fraud because the allegations in the complaint failed to meet the heightened pleading standards under Fed. R. Civ. P. 9(b). Specifically, the court concluded that the Millers' vague allegations that Vonage published advertisements and representations stating it would keep customers' personal information private failed to particularly allege the contents of the alleged false representations and the dates the statements were made. (ECF No. 17 at 21–22.) In the amended complaint, the Millers have attempted to add the required detail, including the specific dates Dr. Miller read and relied on the alleged false statements and the content of those statements.

The amended complaint alleges that "[o]n or about March 30, 2012, Dr. Miller researched Vonage's residential calling plans on Vonage's website to determine whether Vonage would keep his family's personal information, namely their personal home telephone number and home address ("Personal Information"), unpublished as had been his practice with all prior phone companies since Dr. Miller entered the field of psychology on or about August 1988." (ECF No. 19, ¶ 21.) Vonage's website contained the following representation, which Plaintiffs refer to as the "Vonage Non-Publication Promise":

> Vonage does not publish or submit entries to phone books or directory assistance (411) listings. However, there are internet resources you can use to add, edit or remove your own listings.
>
> If you are transferring your phone number to Vonage and your phone number was previously listed, specify Yes on the Number Transfer Authorization form when asked if you want to maintain your current directory listing with your incumbent carrier. Otherwise, if you select No, your listing is removed.

(*Id.* ¶ 22; ECF No. 19-1.)

4

Based upon this representation, Dr. Miller switched his family's residential telephone service from TDS Metrocom to Vonage on April 1, 2012. In doing so, he "checked all the appropriate boxes to ensure that Personal Information would not be published and would remain unlisted." That same day, Dr. Miller received an email from Vonage confirming that his account was in the process of being activated and reiterating its assurance that "we are committed to safeguarding your personal account information and protecting your privacy." The complaint alleges that Vonage employees later "confirmed that their records confirmed he had appropriately completed the registration to maintain Personal Information unpublished when establishing residential service with Vonage." (*Id.* ¶¶ 23–26.)

The amended complaint also alleges that as part of the registration process, Vonage requires subscribers to acknowledge and agree to Vonage's Terms of Service (TOS). (*Id.* ¶ 27.) As the court noted in its earlier decision, the TOS constitutes "the agreement between Vonage America . . . and the user of Vonage's communications services and any related products or services." (TOS § 1, Snowden Decl. Ex. A, ECF No. 8-1.) With respect to directory listings, the TOS states: "The phone numbers you get from us will not be listed by us in any telephone directories. However, any phone numbers you transfer from your local phone company may be or remain listed. We have no control over directory listings." (*Id.* § 5.6.) Vonage's TOS also contains an integration clause:

> This agreement, including any future modifications to its terms, and the rates for services found on our web site constitute the entire agreement between you and Vonage. This agreement governs your use of our service, and the use of our services by the members of your household and your guests and employees. This agreement supersedes any prior agreements between you and Vonage. It also supersedes all prior or contemporaneous statements, understandings, writings, commitments, or representations concerning its subject matter.

5

(*Id.* § 13.6.) Finally, Vonage's TOS deny third party beneficiaries who are not parties to the agreement from "any remedy, claim, liability, reimbursement, or cause of action." (*Id.* § 13.4)

Despite these new allegations, Plaintiffs' claims for misrepresentation still fail to state a claim. Indeed, it is clear from the allegations of the amended complaint that the Plaintiffs have no claim for misrepresentation and that they have plead themselves out of court. *See Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008) (noting that "a plaintiff can plead himself out of court by alleging facts that show there is no viable claim"). The misrepresentation claims fail because it is clear from the complaint that no misrepresentation of fact was made.

To prove a claim for misrepresentation, a plaintiff must establish that (1) the defendant made a factual representation that was untrue; (2) the plaintiff believed the statement to be true; and (3) the plaintiff relied on it to his or her detriment. *Ollerman v. O'Rourke Co., Inc.*, 94 Wis. 2d 17, 24, 288 N.W.2d 95 (1980). As Vonage points out, Plaintiffs fail to explain how the statement from its website is untrue. At the outset, only Dr. Miller viewed the website, and thus neither his wife nor his child could have relied on any information on the website to their detriment. But even aside from this problem, nothing in the complaint suggests that what Plaintiffs refer to as Vonage's Non-Publication Promise is untrue.

Under Wisconsin law, it is well-settled that liability for misrepresentation must be based on a false statement of present or pre-existing fact, not an unfulfilled promise or statement as to future events that turns out to be mistaken. *See Hartwig v. Bitter*, 29 Wis. 2d 653, 656, 139 N.W.2d 644 (1966); *Badger Pharmacol, Inc. v. Colgate-Palmolive Co.*, 1 F.3d 621, 627 (7th Cir. 1993). An exception to this "pre-existing fact" rule applies "where the promisor, at the time of the promise or representation was made, had a present intent not to perform." *Badger Pharmacol*, 1 F.3d at 628

n.7 (citing *Hartwig*, 29 Wis. 2d at 657, 139 N.W.2d at 647). Thus, if Vonage had no intention of keeping Plaintiffs' personal information confidential, it could be liable for fraud.

Here, it is clear the exception does not apply. The Millers appear to theoretically straddle the rule and exception; they do not straightforwardly allege Vonage had a present intent not to perform. The closest the Millers come is to allege in the strict responsibility claim that "Vonage *should have known it did not intend* to honor its representation that it would not publish" the information. (ECF No. 19 at ¶ 90) (emphasis added). But this allegation is paradoxical; the promisor must know what he intended. Indeed, the confusing nature of this allegation seems to show the incompatibility of negligent and strict responsibility misrepresentation claims, which are all that are alleged here, with a misrepresentation theory based on the promisor's present intent not to perform. Although Wisconsin law does not explicitly so hold, the Seventh Circuit has recognized this point. *See Badger Pharmacol*, 1 F.3d at 628 n.7 ("[I]t would appear that if one making representations had a present intention not to perform them, the aggrieved party's claim would properly and logically be one for intentional misrepresentation."). In any event, without any allegation that Vonage had a present intent not to perform, the Millers' allegations do not state a claim under the exception.

What is left is the fundamental requirement of misrepresentation that the Millers allege Vonage made a false representation of present or pre-existing fact. They have not done so. The Millers do not claim Vonage represented it did not publish information when at the time it actually was publishing information. Instead, the Millers cite Vonage's representation that it does not, as its practice, publish information, and then they allege that in this case Vonage, or Choice One, its subcontractor, actually did end up publishing their information. The complaint itself alleges this

7

happened *after* Vonage's representation when its subcontractor "errantly" issued the service order. (ECF No. 19 at ¶¶ 23, 37.) The fact that the publication of Plaintiff's Personal Information occurred as a result of a mistake is logically inconsistent with their allegation that Vonage misrepresented its intent. And Vonage's theory that the TOS somehow rendered the "non-publication promise" actionable must also fail, because § 5.6 does not state Vonage lists phone numbers. Rather, like the website representation, it expressly states Vonage does not do so. For all of these reasons, the Millers have failed to state a cognizable claim of misrepresentation and therefore counts two and three will be dismissed.

### B. Deceptive Trade Practices Act

The Millers' DTPA claim similarly fails. A claim under Wis. Stat. §100.18 has three elements: (1) the defendant made a representation to the public with intent to induce an obligation; (2) the representation was untrue, deceptive or misleading; (3) the representation caused the plaintiff a pecuniary loss. *K & S Tool & Die Corp. v. Perfection Machinery Sales, Inc.*, 2007 WI 70, ¶ 19, 301 Wis. 2d 109, 732 N.W.2d 792. Because a claim under the DTPA sounds in fraud, it must be pleaded with particularity. *Pirelli Armstrong Tire Copr. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011); *see also Byrd v. Landowski*, No. 2009 AP2504, at *2 (Wis. Ct. App. July 21, 2010) (applying particularity standard of Wis. Stat. § 802.03(2) to claim under DTPA). It is not clear that the pre-existing fact rule applies to a DTPA claim. *See Butteris v. Christiansen*, No. 98-1309 (Wis. Ct. App. Dec. 10, 1998) (applying pre-existing fact rule to DTPA claim). *But see Christense v. TDS Metrocom LLC*, No. 2008AP554, at *3 n.5 (Wis. Ct. App. Dec. 11, 2008) (noting no published Wisconsin Court of Appeals decisions applying pre-existing fact rule to DTPA claim).

8

Whether the pre-existing fact rule applies or not, however, the Millers' DTPA claim fails because the allegations in the amended complaint do not show how Vonage's website representation was untrue, deceptive or misleading. In the initial complaint, the Millers simply stated Vonage made representations it would keep customer information private upon request, and that such statements "were untrue or misleading." (ECF No. 101 at ¶ 55.) Vonage moved to dismiss the DTPA claim and argued § 5.6 "informed Plaintiffs that previously unpublished telephone numbers may be listed." (ECF No. 7 at 18.) The Millers now allege Vonage's interpretation of § 5.6 somehow renders the website representation untrue, deceptive or misleading. (*See* Am. Compl. ¶¶ 39, 74, ECF No. 19.) But Vonage's argument in support of its earlier motion is irrelevant. The question is whether the website statement—that "Vonage does not publish or submit entries to phone books or directory assistance (411) listings"—was untrue or misleading when made. Absent some allegation as to how the representation was untrue or confusing when made (rather than merely a description of the services Vonage does and does not offer), this statement cannot serve as the basis of a DTPA claim. The Millers have provided no such allegation, and therefore count one will also be dismissed.

### C. Negligence

In their initial complaint, the Millers claimed negligence based on an alleged duty on Vonage's part to use reasonable care to protect them from the dissemination of their personal information, as requested by Dr. Miller. (ECF No. 1-1, ¶ 94.) When Vonage moved to dismiss, the Millers responded by citing the general principle under Wisconsin tort law that every person owes a duty of ordinary care to the world at large. The court rejected that argument, however, because Wisconsin courts have held that where an alleged tort is related to a contract, a cause of action in tort requires that "a duty must exist *independently of the performance of the contract.*" *Madison*

*Newspapers, Inc. v. Pinkerton's Inc.*, 200 Wis. 2d 468, 473, 545 N.W.2d 843 (Wis. Ct. App. 1996) (emphasis in original). This court noted that the Millers could identify no such independent duty because "[a]bsent a contract, the inadvertent release of a person's telephone number and address does not give rise to liability under Wisconsin statutory or common law." (ECF No. 17 at 23.) Accordingly, the negligence claims in the initial complaint were dismissed.

The Millers' amended complaint includes claims of negligent performance of services and negligent infliction of emotional distress. Each count includes an allegation by the Millers that "Vonage had a duty to perform the contracted services free of negligence . . . ." (ECF No. 19, ¶¶ 105, 116) (citing *Ins. Co. of N. Am. v. Cease Elec. Inc.*, 2004 WI 139, 276 Wis. 2d 361, 688 N.W.2d 462). The Millers also allege Vonage had a duty to prevent the publication of the Millers' personal information "as requested by Dr. Miller"; a duty to use reasonable care to correct the wrongful publication once Dr. Miller informed them of it; and a duty to reasonably provide its services "as promised on its website." (ECF No. 19, ¶¶ 106–07, 109, 117–18.)

Vonage has moved to dismiss the new negligence claims for the same reason the initial claims were dismissed. The Millers respond by citing *Cease Electric* and *Colton v. Foulkes*, 259 Wis. 142, 47 N.W.2d 901 (1951). The Millers argue these cases stand for the principle that "[a]ccompanying every contract is a common-law duty to perform with care skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract." *See Colton*, 259 Wis. at 146, 47 N.W.2d 901. Under this principle, the Millers argue, they have pleaded viable causes of action for negligence.

Plaintiffs have read *Colton* and *Cease Electric* too broadly. The Wisconsin Supreme Court revisited *Colton* and elaborated on the relationship between contract and tort duties in *Landwehr v.*

*Citizens Trust Co.*, 110 Wis. 2d 716, 329 N.W.2d 411 (1983). In *Landwehr*, the court was asked to decide whether a cause of action in negligence arises out of a testator's failure to properly execute his will. In ruling that it did not, the court explicitly rejected the notion that negligence in the performance of a contract can by itself constitute a separate tort:

> Both parties have cited [*Colton*], as authority for their respective positions. We stated in *Colton* that where there is a general duty, even though it arises from the terms of the contract, the breach of that duty may constitute actionable negligence. The plaintiff in *Colton v. Foulkes* was allowed to proceed on a tort theory even though a cause of action for breach of contract was apparently available. However, the facts in *Colton* are worth noting. In *Colton*, the defendants had contracted with the plaintiff to repair the porch railing on the plaintiff's house. It was alleged in the complaint that the defendants "carelessly and negligently" fastened the railing, that they used "unsuitable and unsafe materials" and that their negligence caused the plaintiff's bodily injuries. . . .

*Id.* at 722. The court explained that in *Colton* it had adopted the rule that "[o]rdinarily, a breach of contract is not a tort, but a contract may create the state of things which furnishes the occasion of a tort." *Id.* (citations omitted). The court then adopted the principle that "there must be a duty existing independently of the performance of the contract for a cause of action in tort to exist." *Id.* The court explained, citing Prosser: "[t]here will be liability in tort for misperformance of a contract whenever there would be liability for gratuitous performance without the contract—which is to say, whenever such misperformance involves a foreseeable, unreasonable risk of harm to the interest of the plaintiff." *Id.* This principle has been followed by Wisconsin courts since *Landwehr* was decided, including by the court of appeals in *Madison Newspapers*, and the principle was unaffected by *Cease Electric*. That case, as the Millers acknowledge, dealt with the economic loss doctrine and did not affect the *Landwehr* principle discussed above.

11

The Millers have again failed to identify an independent duty that was breached by the inadvertent publication of their phone number and address. They cannot create a common law duty by alleging Vonage should have done the things "as requested by Dr. Miller" (*e.g.*, ECF No. 19 ¶ 106) or "as promised on [Vonage's] website" (*id.* ¶ 108). Thus, *Landwehr* controls, and the Millers' negligence claims will also be dismissed.

**THEREFORE, IT IS HEREBY ORDERED** that Vonage's motion to dismiss is hereby **GRANTED** and each of the claims in the amended complaint are hereby **DISMISSED WITH PREJUDICE**. The Clerk is instructed to enter judgment accordingly.

Dated this  5th  day of January, 2015.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court